RECEIPT # 55456
AMOUNT $ 150
SUMMONS ISSUED 3
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 4-23-04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIM BENEDETTO and JOSEPH BENEDETTO, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>VASO ACTIVE PHARMACEUTICALS, INC., JOHN J. MASIZ AND JOSEPH FRATTAROLI<br><br>Defendants. | Civil Action No.<br><br>04-10808 NG<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br>MAGISTRATE JUDGE ___<br><br>JURY TRIAL DEMANDED |

Plaintiffs have alleged the following based upon the investigation of Plaintiffs' counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Vaso Active Pharmaceuticals Inc. ("Vaso" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, media reports about the Company, and Plaintiffs' belief that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of purchasers of Vaso securities between December 11, 2003 and March 31, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §77k(a) and 77o], and Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.  Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b), as defendant Vaso maintains offices in this District and many of the acts and practices complained of herein occurred in this District.

5.  In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.  Plaintiffs Kim Benedetto and Joseph Benedetto, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of Vaso at artificially inflated prices during the Class Period and has been damaged thereby.

7.  Defendant Vaso is a Delaware corporation with it principal executive offices at 99 Rosewood Drive, Suite 260, Danvers, MA 01923. Vaso's principal activity is to develop, manufacture and market over-the-counter pharmaceutical products. The Company focuses on drugs that incorporate vaso active lipid encapsulated ("VALE") transdermal delivery technology.

2

Vaso currently markets Athlete's Relief and Osteon in the United States. Vaso's products include analgesics, toe fungal treatment, acne, first aid, hand and body lotion, and psoriasis treatment. The Company is planning to rebrand its deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

8.      Defendant John J. Masiz ("Masiz") was the Chairman, President and Chief Executive Officer of Vaso. He is also the CEO and Chairman of BioChemics, Vaso's controlling shareholder.

9.      Defendant John Frattaroli ("Frattaroli") was the Chief Financial Officer of Vaso.

10.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

11.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Vaso, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day

3

operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of federal securities laws.

12.     As officers and controlling persons of a publicly held company whose stock was registered, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ National Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate, accurate and truthful information with respect to the Company's financial condition, performance and growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct an previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.     The Individual Defendants participated in the drafting, preparation and/or approval of the various public and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of the materially false and misleading nature. Because of

their Board membership and/or executive and managerial positions with Vaso, each of the Individual Defendants had access to the adverse undisclosed information and Vaso's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Vaso and its business issued or adopted by the Company materially false and misleading.

14. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

15. Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Vaso securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public concerning Vaso's business, operations, and management; (ii) permitted the Company to complete a stock offering and a private placement, which yielded approximately $15.5 million in proceeds; and (iii) caused Plaintiffs and other members of the Class to purchase Vaso securities at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

16. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Vaso securities (the "Class") on the open market during the Class Period. Excluded from the Class are defendants, directors and officers of Vaso and their families and affiliates.

17. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

18. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

19. Plaintiffs will fairly and accurately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and securities litigation.

20. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a)    Whether the federal securities laws were violated by defendants as alleged herein;

    (b)    Whether defendants omitted and/or misrepresented material facts;

    (c)    Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were

made, not misleading; and

(d) Whether defendants knew or recklessly disregarded that their statements were false and misleading.

21. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

22. Vaso develops, manufactures and markets over-the-counter pharmaceutical products. The Company focuses on drugs that incorporate VALE transdermal delivery technology. Vaso currently markets Athlete's Relief and Osteon in the United States. Vaso's products include analgesics, toe fungal treatment, acne, first aid, hand and body lotion, and psoriasis treatment. At the time of its initial public offering ("IPO"), the Company planned to rebrand its deFEET athlete's foot anti-fungal medication under the names Termin8 and Xtinguish.

23. Vaso began its operations as a division of BioChemics Inc., in January 2001, and has operated as an independent entity since January 2003. The Company has a limited operating history, given that the deFEET and Osteon were in the early stages of commercialization when the Company went public. With the exception of deFEET, Vaso had not sold any products or recognized any revenue from product sales.

24. During the Class Period, defendants materially misrepresented that "clinical trials"

for Vaso's foot cream product, Termin8, was supervised by independent physicians and analyzed by the New England Medical Center, in Boston, M.A. The trial, however, was not supervised by "independent physicians"– it was overseen by a single podiatrist chosen by Vaso's then parent company and current majority shareholder, BioChemics Inc. Moreover, the New England Medical Center had nothing to do with the study associated with the "clinical trial" and merely analyzed the statistical information gathered by BioChemics Inc. In addition, the New England Medical Center confirmed that it was unable to draw any conclusions about the effectiveness of the product and played no role in selecting the patients and gathering evidence.

25. Subsequently, the SEC halted trading of Vaso stock beginning April 1, 2004. The SEC "questioned assertions made in the company's press releases, annual report, registration statement and public statements made to investors." Vaso shares closed at $7.59 on March 31, 2004.

26. The Class Period begins on December 11, 2003 – the day Vaso announced its completion of its IPO, which raised over $7 million, and filed a registration statement ("Registration Statement") with the SEC in connection with the IPO. The Registration Statement was signed by Defendants Masiz and Frattaroli, among others. With regard to the Company's key products, the Registration Statement stated, in part:

> Although all of our product candidates will be entering established markets, they will be distinct and unique among existing products in those markets in that they will all incorporate the VALE technology. We intend to market these product candidates using this distinction in much the same way as our current products have been marketed. Since these product candidates are in the early development stage, we are not able to predict when these product candidates will be ready for distribution and sale, if ever.

8

           \*     \*     \*     \*     \*     \*

Osteon and Athlete's Relief will now be marketed, distributed, commercialized and sold by us in the United States. During the course of the 12 month period immediately following this offering, all deFEET branded product currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET.

All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

**deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days**. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. **In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period. There were two groups in the study, one treated with deFEET and the other with Schering-Plough's Tinactin®. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days**. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology. [emphasis added]

27. On December 16, 2003, Vaso announced its successful completion of a placement of its over-allotment of shares. Through the total over-allotment placement and the shares sold during the IPO, Vaso raised over $8 million in proceeds.

28. On February 19, 2004, Vaso issued a press release announcing a 3 for 1 stock split

of its common stock. The press release stated in part:

> Vaso Active Pharmaceuticals, Inc. (Vaso Active) (Nasdaq SC:VAPH) of Danvers, Massachusetts, announced today that the Board of Directors has declared a 3 for 1 stock split effective in the form of a 200 percent stock dividend payable on or about March 5, 2004 to holders of record of both Class A and Class B common stock as of February 23, 2004. Under the terms of this stock split, holders of the Company's Class A and Class B common stock will receive a dividend of two shares of Class A and Class B common stock for every one share of Class A and Class B common stock held on that record date. The dividend will be paid in authorized but unissued shares of Class A and Class B common stock of the Company.
>
> The Company anticipates that the combined amount of issued and outstanding shares of both the Class A and Class B common stock after the split will be increased from 3,428,000 shares to 10,284,000 shares.
>
> John Masiz, Chief Executive Officer and Chairman of Vaso Active stated. "One of the ways many institutions measure investment appeal is through the liquidity of a security. Recently, there has been significant demand for our common stock at the institutional level. However liquidity has proved to be an obstacle. To help resolve this, the Board of Directors has declared this 3-for-1 stock split to increase our liquidity to the public market place, thus enhancing our securities' appeal to both retail and institutional investors."

29. On March 17, 2004, the Company announced the successful completion of a private placement of $7,500,000 in Vaso securities with an institutional investor. The press release announcing the private placement stated in part:

> Vaso Active Pharmaceuticals, (Vaso Active) (Nasdaq SC:VAPH - News) of Danvers, Massachusetts, is pleased to announce that it has entered into a private placement transaction in the amount of $7,500,000 with an institutional investor. The investment which is in the form of an 18 month 2% Convertible Note, is convertible into shares of Class A common stock at a conversion rate of $9 per share,

at the option of the investor. Both principal and interest are payable in cash or in shares of Class A common stock, at the option of Vaso Active. The purchase agreement includes anti-hedging provisions and the maturity date may be extended for up to two years at the option of the investor. In addition, Vaso Active issued to the investor warrants to purchase 166,667 shares of Class A common stock at an exercise price of $8.75 per share.

Mr. John J. Masiz, President and Chief Executive Officer of Vaso Active was very pleased that Vaso Active was successful in consummating this institutional private placement at what Mr. Masiz considered favorable terms. "The ability to secure additional funds through the completion of this private placement gives Vaso Active significant new working capital to augment the working capital derived from its IPO. This will enhance Vaso Active's capital base with which to operate and will permit the Company to take advantage of strategic opportunities that arise in the course of growing our business. In addition, the execution of this agreement at a premium to the current market price of our common stock underscores the value of our technology to a material investor"

30. On March 26, 2004, Vaso filed it annual report wit the SEC on Form 10-KSB for the period ending December 31, 2003. The annual report, signed by defendants Masiz and Frattaroli, representing the following about Vaso Termin8 product

Termin8 is a topically-applied, transdermal anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. Termin8 employs the VALE transdermal drug delivery system to effectively and efficiently deliver a mild anti-fungal agent called Tolnaftate into the skin surrounding the affected area.

31. That same day TheStreet.com published an article entitled "Another Vaso Active Hang-Up." The article reported that Vaso, during its first conference call with investors, represented that the Company expected its "sales to soar next year because of a number of 'strategic' deals it has reached to market Termin8 and other lotions that use its 'revolutionary' transdermal delivery system." However, defendant Masiz "abruptly ended" the call after reading a statement predicting the

11

company's sales would climb from $53,000 to a "run rate" of $12 million next year, leaving the nearly 100 listeners "stunned."

32. The statements referenced in ¶¶24-26 and 28-31 were each materially false and misleading when made as they failed to disclose and/or misrepresented material, adverse facts:

(a) Vaso's claims of the effectiveness of its Termin8 were unsubstantiated;

(b) The "clinical trial" concerning the efficacy of Termin8 was not supervised by independent physicians nor analyzed by the New England Medical Center;

(c) The New England Medical Center was unable to draw any conclusions about Termin8's effectiveness;

(d) as a result of the foregoing, defendants' statements concerning the efficacy of Vaso's products, as well as the Company's current and future financial products, lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

33. On March 10, 2004, TheStreet.com published an article questioned the "clinical trial" that was purportedly conducted at the New England Medical Center in Boston, in which, according to Vaso, "100% of the study subject given Termin8 were cured within 10 day." The article states in part:

> Trouble is, the New England Medical Center [] didn't actually do the nearly six year study.
>
> **All the New England Medical Center did was analyze the statistical information gathered by Vaso Active's parent company**, BioChemics Inc. -- something the center does all the time for paying customers. **The medical center employee who analyzed the**

12

> **statistics said she can't draw any conclusions about the effectiveness of the product, since she had no hand in selecting the patients and gathering the evidence.**
>
> Robin Ruthazer, the medical center employee who reviewed the statistics, said she wouldn't refer to the study as one produced by the medical center. "We just analyzed the data. It's not anything special," she said.
>
> In fact, **the person who supervised the study was a podiatrist hand-picked by BioChemics**.
>
> Even John Masiz, Vaso Active's president and CEO, acknowledges as much when asked about the company's claim. "We approached a podiatrist to conduct the research for us," he said." [emphasis added].

The article also noted that the SEC was scrutinizing other claims made by Vaso, including an endorsement from the American Association of Medical Foot Specialists. In reaction to this news the price of Vaso shares dropped to $8.33, down $3.13 from the previous day's close.

34. The Class Period ends on March 31, 2004, when the SEC halted trading of the Company's stock. The SEC questioned the accuracy of assertions many in Vaso's press releases, annual report, registration statement and public comments to investors. Vaso stock closed at $7.59 per share on March 31, 2004.

35. The Company's shares were subsequently delisted by the NASDAQ on April 8, 2004.

## SCIENTER ALLEGATIONS

36. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading, knew that such statements or documents would be issued or disseminated to the

13

investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Vaso, their control over, and/or receipt and/or modification of Vaso's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vaso, participated in the fraudulent scheme alleged herein.

37. Defendants were further motivated to engage in this fraudulent course of conduct to generate proceeds from its IPO and private placement, through which Defendants reaped a total of $15.5 million in proceeds.

### Applicability Of Presumption Of Reliance: Fraud-On-The-Market Doctrine

38. At all relevant times, the market for Vaso's common stock was an efficient market for the following reasons, among others:

(a) Vaso's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Vaso filed periodic public reports with the SEC and the NASDAQ;

(c) Vaso regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through

           other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Vaso was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

39.    As a result of the foregoing, the market for Vaso's common stock promptly digested current information regarding Vaso from all publicly available sources and reflected such information in Vaso's stock price. Under these circumstances, all purchasers of Vaso's securities during the Class Period suffered similar injury through their purchase of Vaso's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

40.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the

forward-looking statement was authorized and/or approved by an executive officer of Vaso who knew that those statements were false when made.

## COUNT I

### VIOLATION OF SECTION 11 OF THE SECURITIES ACT

41. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein, except that this Count does not incorporate by reference any allegation of knowing or reckless misconduct by defendants.

42. This Count is asserted against Vaso and all Individual Defendants for violations of § 11 of the Securities Act, 15 U.S.C. §77k, on behalf of all persons who acquired shares of Vaso's common stock through, or traceable to, the Company's IPO.

43. Vaso was the registrant for the securities issued in the IPO pursuant to the Registration Statement. Vaso was also the issuer of the stock issued via the Registration Statement. As such, Vaso is liable to Plaintiffs and the Class members for the misstatements and omissions contained in the Registration Statement. The Individual Defendants were officers and/or directors of the Company at the time of the IPO and, along with Vaso, were responsible for the contents of the Registration Statement. The Individual Defendants are signatories of the Registration Statement, either personally or by attorney-in-fact.

44. Defendants issued, caused to be issued, and participated in the issuance of the materially false and misleading Registration Statement, which misrepresented and failed to disclose, inter alia, the material facts concerning the Company's business and prospects.

45. Plaintiffs and other members of the Class acquired Vaso's common stock pursuant

16

to and/or traceable to the Company's IPO without knowledge of the untruths or omissions alleged herein. Plaintiffs and the other members of the Class could not have reasonably discovered the nature of defendants' untruths and omissions.

46. Plaintiffs and the other members of the Class have sustained damages. The value of Vaso shares has declined precipitously due to and subsequent to the disclosure of defendants' violations.

47. The action was brought within one year after the discovery of the untrue statements and omissions and less than three years after the stock exchange.

48. The defendants are liable to Plaintiffs and the other members of the Class.

## COUNT II

### VIOLATION OF SECTION 15 OF THE SECURITIES ACT AGAINST THE INDIVIDUAL DEFENDANTS

49. Plaintiffs repeat and reallege each and every allegation contained in paragraphs above as if fully set forth herein, except that to the extent any allegations contained above may be interpreted to sound in fraud, such allegations are expressly not incorporated under this Count.

50. This Count is asserted against the Individual Defendants for violation of Section 15 of the Securities Act, 15 U.S.C. § 77o.

51. The Individual Defendants, by virtue of their positions, stock ownership, and specific acts as described herein, had the power, and exercised the same, to control the representations and actions of Vaso.

52. Each of the Individual Defendants was a culpable participant and is jointly and

severally liable to Plaintiffs and the members of the Class as a "control person" pursuant to Section 15 of the Securities Act.

53. As a result of the foregoing, Plaintiffs and the members of the Class have suffered damages.

## COUNT III

### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AGAINST AND RULE 10b-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

54. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

55. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) complete an IPO and private placement which yielded the Company $15.5 million; and (iii) cause Plaintiffs and other members of the Class to purchase Vaso securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants took the actions set forth herein.

56. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vaso securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and financial performance of Vaso as specified herein.

58.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vaso's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Vaso and its business operations and financial performance in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Vaso securities during the Class Period.

59.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

60.  The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Vaso's operating financial performance and operations from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.  As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Vaso's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Vaso's publicly traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiffs and the other members of the Class acquired Vaso securities during the